UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN BUCHANAN, *et al.*,

      Plaintiffs,

                                         Case No. 12-13666

v.

                                         Hon. John Corbett O'Meara

OAKLAND COUNTY, *et al.*,

      Defendants.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the court are several motions, including Plaintiff's motion to file a second amended complaint and cross-motions for summary judgment, which have been fully briefed. The court heard oral argument on February 27, 2014, and took the matter under advisement.

## BACKGROUND FACTS

Plaintiffs are property owners in Highland Township, Michigan, who oppose the designation and establishment of a "drainage district" in their neighborhood. Plaintiffs live on or near Lower Pettibone Lake, and fall into two categories: those whose lots are located on the edge of the lake ("Lakefront Lots") and those whose lots are located between the Lakefront Lots and Milford Road ("Upper Ridge Lots"). Lakefront Lots 16 and 32 are lake access lots for the Upper Ridge owners.

In 2009, certain property owners surrounding the lake applied for the designation of a drainage district with the Oakland County Water Resources Commissioner ("OCWRC"), so that a sewer could be constructed. The application was submitted in accordance with the Drain Code, M.C.L. 280.51, which requires it to be signed by "not less than 10 freeholders of the township or townships in which such proposed drain . . . may be situated."

On March 15, 2010, the Water Resource Commissioner, John P. McCulloch, entered an order designating a drainage district "to be known as the Lower Pettibone (Lake) Sanitary Drain." On August 17, 2010, a petition for constructing a new drain was filed with the OCWRC by a group of property owners pursuant to M.C.L. 280.71, which requires such a petition to be "signed by a number of freeholders in said drainage district whose lands would be liable to an assessment for benefits, equal to ½ the number of freeholders whose lands would be traversed by the drain or drains applied for or abut on any highway or street along the side of which such drain extends, between the point where the drain enters such highway and the point where it leaves such highway and which lands are within the drainage district." Defendants contend that this requirement was met because 23 of the 36 eligible persons (Lakefront Lot owners) signed the petition. Plaintiffs contend that the Upper Ridge owners should have been considered in this equation.

-2-

To act upon the petition, the OCWRC convened a board of determination pursuant to M.C.L. 280.72.  A hearing before the board was held on October 18, 2010, to determine whether the drain requested in the petition was necessary and conducive to public health, convenience, and welfare. See M.C.L. 280.72(c).  The board heard from both those in favor of and those against the project.  Following deliberations, the board issued an order of necessity dated October 18, 2010.

Pursuant to M.C.L. 280.72a, "any person feeling aggrieved by the determination [of the board of determination] may institute an action in the circuit court for the county in which the real property is located for a determination of necessity."  In accordance with this provision, Plaintiff Oliver Hayman filed a claim of appeal to the Oakland County Circuit Court on October 28, 2010.  The court dismissed the appeal for failure to prosecute on February 24, 2011.

To acquire the necessary easements to construct the drainage system, a condemnation action was filed in Oakland County Circuit Court.  See Lower Pettibone Lake Sanitary Drain Drainage District v. Reid's Subdivision Association, No. 2012-130595.  The Drainage District sought an easement to lay 2.5 inch pipe in the existing roadway in the district.  All of the plaintiffs in this action were defendants in the condemnation action, except for Michael Warren, who accepted

-3-

5:12-cv-13666-JCO-PJK   Doc # 83   Filed 03/06/14   Pg 4 of 12   Pg ID 3796

the good faith offer that was tendered to him.  Plaintiffs, as defendants in the condemnation action, objected to the condemnation because of alleged irregularities in the establishment of the Drainage District, but their claims were rejected by the court, which held that "Defendants failed to establish any error of law or abuse of discretion that would justify Defendants' relief." Defs.' Ex. M (March 27, 2013 TR at 5-6).  The court granted the Drainage District's motion to preclude Plaintiffs' just compensation claim and closed the case on December 5, 2013.

The next step in the process is to determine the final outlines of the Drainage District so that bidding may begin on the construction contracts.  This is done by a "Final Order of Determination" that establishes the drain and creates both the final Drainage District and the "Special Assessment District," which is the description of the lots to be assessed.  The Drain Code provides for judicial review of the Final Order of Determination.  The Final Order of Determination for the Lower Pettibone Lake Sanitary Drain was filed October 23, 2013. Defs.' Ex. K.  In that order, the Lakefront Lots, excluding Lots 16 and 32, are included in the Drainage District and the Special Assessment District; the Upper Ridge Lots are not.


Plaintiffs sought review of the Final Order of Determination in Oakland

County Circuit Court by means of a petition for a writ of superintending control. The circuit court found that Plaintiffs' claims – regarding alleged defects in the proceedings for establishing the Drainage District, including lack of notice – were barred by collateral estoppel because they "involve the same facts essential to the case already determined in the condemnation case." Defs.' Ex. GG (February 5, 2014 TR at 13-14).

After the Final Order of Determination is issued, the statute requires that the Water Resources Commissioner provide notice to all affected parties of a hearing where they may contest the assessments to be levied against their property. The hearing is conducted by the Board of Review. The day of review for the Drainage District was scheduled for December 5, 2013, but was postponed because of Plaintiffs' petition for a writ of superintending control was pending. No assessments have been sent; however, Defendants note that neither the Upper Ridge lots nor the lake access lots (Lots 16 and 32) will be assessed because these lots are not in the Drainage District or the Special Assessment District. See Final Order of Determination, Defs.' Ex. K.

Plaintiffs filed this action on August 17, 2012, alleging various federal and state constitutional violations. The court granted in part Defendants' motion to dismiss on March 8, 2013, dismissing Plaintiffs' takings claims and permitting

Plaintiffs to amend their complaint.  The amended complaint contains the following causes of action: Count One, federal procedural due process (lack of notice of designation of drainage district); Count Two, federal substantive due process/First Amendment (right to assemble and voice concerns about drainage district); Count Three, federal equal protection (disparate treatment with respect to participating/voting on designation of drainage district); Count Four, state equal protection; Count Five, violation of Michigan Constitution and M.C.L. 280.71, because drainage district "not authorized by law"; Count Six, violation of Michigan Constitution and M.C.L. 280.72, because the appointment of the board of determination was contrary to law; and Count Seven, unconstitutionality of the Drain Code, because the notice required by the statute is constitutionally insufficient.

Although stated in various ways, Plaintiffs' claims are essentially that (1) Defendants violated the Drain Code in establishing the Drainage District; (2) the Upper Ridge owners were entitled to notice under the Drain Code of the designation of the Drainage District; and (3) pursuant to their due process and equal protection rights, the Upper Ridge owners were entitled to notice of and a voice in the creation of the Drainage District.  Both sides have filed motions for summary judgment.

## LAW AND ANALYSIS

### I.    Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II.    Constitutional Claims

Plaintiffs contend that the Upper Ridge owners were entitled to notice, an opportunity to be heard, and a vote with respect to the establishment of the Drainage District.  Plaintiffs argue that the Upper Ridge owners have an interest in the project because they own the lake access lots (Lots 16 and 32).  Defendants counter that the Upper Ridge lots and Lots 16 and 32 are not located in the Drainage District or in the Special Assessment District, and that the Upper Ridge owners are not entitled to notice because their lots will not be assessed for the

-7-

drain.  Defendants further contend that the owners of the Lakefront Lots received the notice to which they were entitled.

With respect to Plaintiffs' due process claims, the issue is not whether Plaintiffs received proper notice under the Drain Code, but what notice they were *constitutionally* entitled to receive.  The Michigan Supreme Court recently answered this question in Elba Twp. v. Gratiot County Drain Comm'r, 493 Mich. 265 (2013).  In Elba, the plaintiff challenged the consolidation of certain drainage districts, contending that the notice of the board of review hearing was defective and did not comport with due process.  The Michigan Supreme Court rejected the plaintiff's claims, finding that it was not constitutionally entitled to notice at that stage of the proceedings.  The court explained:

> The May 4, 2012 Board meeting was held to determine the "necessity" of the proposed drainage project.  Simply put, the meeting did not pertain to deprivation of life, liberty, or property, and thus the due process right to notice was not implicated.  The meeting dealt only with whether the drainage project was *necessary* under the terms of the Drain Code and thus whether it should proceed.  As such, due process did not require that *any* notice be given.

Elba, 493 Mich. at 288 (emphasis in original).  In so finding, the court relied in part on federal precedent: "There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment.  It is

enough that a hearing is permitted before the imposition of the assessment as a charge upon the land, or in proceedings for collection afterwards." Id. at 290 (quoting Utley v. St. Petersburg, 292 U.S. 106, 109 (1934)).

Thus, Plaintiffs "were not constitutionally entitled to notice regarding the hearing on the necessity and conduciveness of the drainage project." Id. at 291-92. Rather, they are constitutionally entitled to notice regarding the assessment of their property. Specifically, they are "entitled to notice that the day of review would be held." Id. In this case, the day of review was scheduled, but postponed due to the state court litigation. Because the day of review has not been rescheduled or held, notice is not yet required.

Plaintiffs suggest that they were entitled to notice earlier in the process because their land was ultimately "taken" (in the form of an easement in the roadway) for a public improvement. Plaintiffs were provided notice of the condemnation proceedings, however, and had the opportunity to participate in those proceedings. This satisfies the requirements of due process. See Warren v. City of Athens, 411 F.3d 697, 709 (6th Cir. 2005) ("Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing."). Plaintiffs have not cited authority that they were constitutionally entitled to notice any earlier. In light of Elba, Plaintiffs cannot

-9-

demonstrate that their state or federal due process rights to notice or an opportunity to be heard have been violated.

Moreover, to the extent Plaintiffs suggest that they had an equal protection right to be heard or vote with respect to the designation of the Drainage District or petition to construct the drain, their argument is misplaced. Plaintiffs contend that the Upper Ridge owners were deprived of their "fundamental right to vote" with respect to the Drainage District. Plaintiffs cite no authority for the proposition, however, that they have a state or federal constitutional right to vote regarding the establishment of a drainage district, as opposed to in elections. See Utley, 292 U.S. at 109 ("There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment."). Further, as described above, the Upper Ridge Lot owners have no interest in the Drainage District, as their lots are not included in it and they will not be assessed for the drain.

## III.  **Violations of Drain Code**

Plaintiffs complain that Defendants did not comply with the Drain Code in providing notice, obtaining the correct number of signatures on the petition, and in appointing the Board of Determination. These issues have been ruled upon in Defendants' favor at least twice in state court – in the condemnation action and in the superintending control action.

-10-

In any event, given that there are no federal claims remaining, the court will decline to exercise supplemental jurisdiction over Plaintiffs' claims that the Drain Code was violated.  "Where an action in federal court includes both federal and pendent state claims and the court dismisses the federal claims before trial on a motion for summary judgment, the pendent state claims are ordinarily dismissed as well." Williams v. City of River Rouge, 909 F.2d 151, 157 (6th Cir. 1990).  See also Moon v. Harrison Piping Supply, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

## IV.   **Plaintiffs' Second Motion to Amend the Complaint**

Plaintiffs seek to amend their complaint a second time to add factual allegations as well as Count Eight, alleging violations of the Michigan Constitution and M.C.L. § 280.71.  Pursuant to Fed. R. Civ. P. 15(a)(2), the court should "freely give leave [to amend] when justice so requires."  As the Sixth Circuit explained, "[l]eave is freely given, but courts may deny leave to amend when the amendment would be futile or cause undue delay which would result in unfair prejudice to the defendant.  The longer the delay, the less prejudice the opposing party will be required to show." Dubuc v. Green Oak Twp., 312 F.3d 736, 752 (6th Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Phelps v. McClellan, 30 F.3d

-11-

658, 662 (6th Cir. 1994)).

The court will deny Plaintiffs' motion to amend the complaint as untimely and futile.  At this stage of the proceedings, when discovery is complete and the court is considering motions for summary judgment, allowing Plaintiffs to amend would cause undue delay and would unfairly prejudice Defendants.  Further, Plaintiffs seek to add a state claim, over which the court would decline to exercise pendant jurisdiction, as discussed above.

## ORDER

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED; and Defendants' motion for leave to file additional exhibits in support of their motion is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' motions to file a second amended complaint and for summary judgment are DENIED; and Defendants' motion to file a sur-reply is DENIED.

Date: March 6, 2014                           s/John Corbett O'Meara
                                              United States District Judge


I hereby certify that a copy of this order was served upon counsel of record on this date, March 6, 2014, using the ECF system.

                                              s/William Barkholz
                                              Case Manager